JAMES A. WILSON, Plaintiff, *v.* JAMES C. TENNENT, Defendant.

(Supreme Court, Livingston Trial Term, July, 1900.)

1. Corporation — Natural gas corporation not subject to penalty for failure to furnish gas.

   The penalty imposed by the Transportation Corporations Law (L. 1890, chap. 566, § 65), upon a gas or electric light corporation for a failure to furnish gas or electric light to an owner or occupant of a building within one hundred feet of a main or wire, is not recoverable against a corporation, organized to bore, drill, dig or mine for natural gas and operating in a village, for its refusal to furnish natural gas

18

to a consumer at the price for which it had agreed to furnish it to the public, as a condition of obtaining from the village a franchise to lay its mains and pipes.

**2.** Same — Natural gas, how organized.

Such a corporation is properly organized under the Business Corporations Law (L. 1892, chap. 691), and could not lawfully be organized under the Transportation Corporations Law (L. 1890, chap. 566).

ACTION to recover penalties for refusing to supply plaintiff with natural gas for lighting purposes.

George D. Forsyth, for plaintiff.

William Carter, for defendant.

DAVY, J. This action is brought to recover penalties for refusing to supply the plaintiff with natural gas for lighting his residence in the village of Caledonia, Livingston county, New York.

It appears from the evidence taken upon the trial that the Caledonia Gas Light & Heating Company was organized on the 21st day of December, 1895, pursuant to the provisions of the Business Corporations Law, to bore, drill, dig or mine for natural gas. Shortly after the company was incorporated, it presented to the board of trustees of the village of Caledonia a written application for permission to lay its pipes and mains through the public streets and highways of said village for the purpose of conducting natural gas for lighting the streets, public places and private dwellings.

It was stated in the application that the price of gas to consumers should not exceed twenty-five cents per thousand feet. After receiving permission from the municipal authorities, the company laid its conductors in the streets and furnished gas to consumers at twenty-five cents per thousand feet until about the month of November, 1897, when it increased the price to forty cents per thousand feet.

On the 20th day of December, 1898, the property and franchise of the company were sold at foreclosure sale to the defendant, who, after he became the owner of the plant, continued to furnish gas to the consumers and to the village authorities at forty cents per thousand feet.

In January, 1899, the plaintiff made application to the defendant to supply gas for lighting his residence, which he refused to do unless the plaintiff would pay his arrearages and also agree to pay for such gas as he might thereafter consume at the rate of forty cents per thousand feet.

On the 9th day of January, 1899, the plaintiff brought this action by the service of a summons which had indorsed thereon the following notice: " This action is brought to recover penalties provided by section 65, chapter 566, of the Laws of 1890, and the amendments thereto, known as the acts in relation to transportation corporations, excepting railroad, etc." On the trial it was conceded by both parties that if the Caledonia Gas Light & Heating Company is liable for penalties under the statute of this State, then this defendant is also liable. That if the Caledonia Gas Light & Heating Company is not liable, then this defendant is not liable. Under these concessions it becomes necessary to determine whether or not the Caledonia Gas Light & Heating Company, which was organized under the Business Corporations Law, would have been liable in an action to recover penalties for its refusal to furnish natural gas to any person living within 100 feet of the mains of the company.

It is also conceded that the plaintiff cannot recover in this action unless he can do so under section 65 of the Transportation Corporations Law. This section refers to that class of corporations that may be organized pursuant to section 60 of that act. Section 60 applies only to two classes of corporations, to wit, manufacturing gas companies and electric light companies.

I am inclined to think that the Caledonia Gas Light & Heating Company was properly organized under the Business Corporations Law, and could not have been legally incorporated under the Transportation Corporations Law. The object of the incorporation was to bore, drill, dig or mine for natural gas, and to convey and distribute the same in pipes to the consumers.

The Business Corporations Law (chap. 691, Laws of 1892) provides that three or more persons may become a stock corporation for any lawful business purpose or purposes other than a money corporation or a corporation provided for by the Banking, the Insurance, the Railroad, and the Transportation Corporations Laws. By the express provisions of the above act corporations organized for manufacturing and supplying gas and electric light are excluded

from organizing under the Business Corporations Law. No authority exists, however, under the Transportation Corporations Law for organizing a corporation for drilling and supplying natural gas to consumers. The act simply provides for the organization of corporations engaged in the manufacture of gas and electricity.

Section 60, chapter 566, Laws of 1890, of the Transportation Corporations Law, provides that three or more persons may become a corporation for manufacturing and supplying gas for lighting the streets and public and private buildings of any city, village or town within this State.

Sections 65 and 66 provide, in substance, that upon the application in writing of the owner or occupant of any building or premises within 100 feet of any main laid down by any gas-light corporation or the wires of any electric light corporation, and payment by him of all moneys due from him to the corporation, the corporation shall supply gas or electric light as may be required for lighting such building or premises, and if for the space of ten days after such application and the deposit of a reasonable sum according to the number and size of lights used or required, or proposed to be used for two calendar months, if the corporation shall refuse or neglect to supply gas or electric light as required, such corporation shall forfeit and pay to the applicant the sum of ten dollars and the further sum of five dollars for every day thereafter during which such refusal or neglect shall continue.

It will be seen from the context of the Transportation Corporations Law, pertaining to gas companies, that it permits three or more persons to organize a corporation for manufacturing and supplying gas, but it makes no provision for organizing a corporation to engage in drilling, boring and supplying natural gas to consumers.

The objects and purposes of the two classes of gas corporations are widely different; one produces the gas for the consumer by manufacturing it, the other by drilling or boring for it. I do not see how both of these corporations can be organized under an act which simply provides for the organization of corporations to manufacture gas. The preparation of natural gas for the market is not a manufacture within the meaning of the statute. Natural gas is a product of nature confined in the bowels of the earth and is usually obtained by boring or drilling for it. A manufacturing

corporation must have for its object the manufacture of some article or thing from raw material. A manufacturer is defined by Webster as one who works raw materials into wares suitable for use.

In Nassau Gas Light Co. v. City of Brooklyn, 89 N. Y. 411, Judge Finch says: " We can see no just reason for interpreting the words ' manufacturing corporations ' in any other than their usual and ordinary sense, and as relating to all companies, under whatever law incorporated, and by whatever general name, whose chief and principal business is the manufacture and sale of artificial products." Manufactured gas, therefore, is not a natural product; neither is natural gas a manufactured article.

There is no reference to natural gas corporations in the Transportation Act, except in section 62, which provides for the appointment of inspectors of gas meters used for measuring or ascertaining the quantity of illuminating gas furnished by any gas-light corporation or corporations engaged in supplying natural gas to consumers. It will be seen from the language of this section that the Legislature intended to make a distinction between gas-light corporations and corporations engaged in supplying natural gas. Section 65 provides for enforcing penalties against gas-light corporations and not against corporations engaged in supplying natural gas to consumers.

A corporation that is engaged in the manufacture of gas can always, by the expenditure of money, manufacture a sufficient quantity of gas to meet the demands of its consumers, but the supply of natural gas must necessarily depend upon the flow, which at times is very uncertain and beyond the control of any human being to regulate it. The Legislature, therefore, has nowhere imposed penalties for refusing to furnish natural gas to consumers.

It is a familiar rule that a statute imposing a penalty must be strictly construed. Its scope should not be enlarged by construction or implication, and the courts should not impose the penalty except in cases where the plain language of the statute requires it.

The learned counsel for the plaintiff contends that the privilege granted to the Caledonia Gas-Light & Heating Company imposes an obligation upon it to supply the plaintiff and the public with gas at twenty-five cents per thousand feet and in refusing to

supply the plaintiff with gas it violated its contract with the municipality.

It is true that the company, in order to obtain the consent of the village authorities to carry on its business in the village and to lay its conductors in the streets for the purpose of delivering gas to the consumers, agreed to supply gas for public and private use at a price not to exceed twenty-five cents per thousand feet. The village authorities of Caledonia were vested with legislative power to grant or refuse the application. It was necessary, therefore, for the gas company to obtain the consent of the municipal authorities before it could legally lay its pipes and carry on its business. As a general rule, a corporation that seeks to obtain privileges from a municipal corporation may deal with the municipal authorities and make contracts the same as an individual. Where a corporation which is organized for public purposes obtains its franchise from the municipal authorities upon certain conditions, it is bound by its contract and cannot repudiate it without permission from the municipal authorities.

Judge O'Brien, in People ex rel. Woodhaven Gas Co. v. Deehan, 153 N. Y. 533, says: "A franchise for supplying gas not only confers a privilege, but imposes an obligation, upon the corporation to serve the public in a reasonable way."

Whether the Caledonia Gas-Light & Heating Company may be compelled to live up to its contract in supplying gas to the consumers is a question not necessary for me to discuss or pass upon in this action. The question here is, can the plaintiff recover the statutory penalties on the ground that the defendant has refused to supply him with natural gas for twenty-five cents per thousand feet.

After a careful examination and consideration of the statutes referred to by counsel, I have reached the conclusion that the penalty imposed by section 65 of the Transportation Corporations Law does not apply to corporations organized for supplying natural gas to consumers.

The complaint, therefore, must be dismissed, with costs.

*Complaint dismissed, with costs.*